**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **GEORGE A. ASTOLAS,** ) | **CASE NO.  1:06CV1759** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the court upon the Report and Recommendation of the Magistrate Judge (ECF DKT #18), recommending the Defendant's final determination be reversed and remanded to the Agency for further proceedings. The Magistrate Judge recommended reversal based on a perceived lack of a reasoned explanation for the Administrative Law Judge's ("ALJ") failure to find the Plaintiff suffers from mental/ emotional impairment that would be considered "severe" within the context of the Plaintiff's claim of disability. (ECF DKT #18 at 7-8). The Magistrate Judge insisted this flaw undermines finding the Defendant's final determination supported by substantial evidence. *Id*. Defendant objects, claiming the ALJ's decision was indeed supported by substantial evidence. Defendant also claims that even if the ALJ erred in failing to find that Plaintiff suffers from a "severe" mental

impairment, the error was not reversible because the ALJ considered all mental impairments in his assessment of Plaintiff's severe physical impairment, and still found Plaintiff was "not disabled."

## PROCEDURAL HISTORY

George A. Astolas, Plaintiff, applied for Disability Insurance Benefits ("DIB"), under 42 U.S.C. §§ 416, 423, and Supplemental Security Income Benefits ("SSI"), under 42 U.S.C §1381 *et seq*., on February 11, 2003, alleging an onset date of December 15, 1999. Plaintiff alleges disability due to atrial fibrillation, depression, personality disorder, and arthritis. The claims were denied initially and upon reconsideration. Plaintiff then filed a timely request for a hearing before an ALJ on December 27, 2004. An evidentiary hearing, at which Plaintiff was represented by counsel, was held on November 23, 2005. Also present and testifying were Richard Watts, M.D., as a medical expert, and Mark Anderson, certified rehabilitation counselor, as a vocational expert. On January 17, 2006, the ALJ entered his opinion denying Plaintiff's claims. That decision became the Commissioner's final determination upon denial of review by the Appeals Council on June 13, 2006. Plaintiff sought judicial review of the decision denying his mental impairment claims for benefits in this Court. The Magistrate Judge issued a decision on June 27, 2007, recommending the final judgment of the Commissioner be reversed and remanded for a new hearing at which the subject of Plaintiff's mental status could be given proper consideration. Defendant then filed his timely Objection to the Magistrate Judge's Report and Recommendation (ECF DKT #19) on July 9, 2007.

## FACTS

The following facts are relevant to Defendant's Objection to the Magistrate Judge's recommendation that the case be remanded for lack of substantial evidence. It is unnecessary to present all of the facts pertaining to Defendant's alternate objection, that even if the ALJ erred, it was not reversible error, because the case can be decided based only on the first objection.

Plaintiff was born on December 15, 1954. (Tr. 14). He completed the 10th grade, obtained his general equivalency diploma (GED), and had past relevant work as a laborer. *Id*. On June 25, 2003, Plaintiff was diagnosed with persistent atrial fibrillation and mild coronary artery disease with normal left ventricular function. (Tr. 16). A pacemaker was implanted in order to restore sinus rhythm on September 18, 2003. *Id*. From 2002 until 2005, cardiologist Stephen Moore, D.O., had been Plaintiff's primary treating physician. *Id*. Dr. Moore opined that Plaintiff could lift, carry, push, and pull 25 pounds occasionally and frequently. *Id*. He found Plaintiff unlimited in his ability to sit, stand, and walk and noted Plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop. *Id*. Dr. Moore further opined that Plaintiff should have only limited exposure to vibration and hazards such as machinery and heights; and due to the pacemaker, should never work around magnetic fields. *Id*. Richard Watts, M.D., testified at the hearing as a medical expert and concurred in general with the assessment by Dr. Moore. (Tr. 347).

On October 28, 2003, Ronald Smith, Ph.D., conducted a psychological examination of Plaintiff. (Tr. 16). During the examination, Plaintiff stated he had held "100 or 200 jobs" over the years because he did not like authority. *Id*. He indicated he quit his last job in 2000 because he could not stand the owner and told Dr. Smith he did not want another job. *Id*. Plaintiff asserted he did not care and did not have to do anything. *Id*. He claimed to feeling depressed since 2002. *Id*. Plaintiff reported relatively normal daily activities to Dr. Smith, (Tr. 17), and also

said he plays on the computer or watches TV mostly all day. (Tr. 337). He indicated the ability to wash and groom himself, clean his house and prepare his own meals. (Tr. 17). Dr. Smith diagnosed depressive disorder not otherwise specified ("NOS") and personality disorder NOS with antisocial features. *Id*. Dr. Smith also noted that Plaintiff's ability to follow simple one or two step job instructions is likely to be poor on the basis of Plaintiff's dislike for authority and his readiness to pick a fight. (Tr. 176). For the same reason, Plaintiff's ability to relate to the public, coworkers, and supervisors would be poor as well. *Id*. Dr. Smith assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 54, connoting "moderate symptoms," which include "conflicts with peers or co-workers." (ECF DKT #18 at 7).

State Agency consultative psychologist Douglas Pawlarczyk, Ph.D., completed a psychiatric review on December 15, 2003, and opined that while Plaintiff displayed signs of depression and antisocial disorders, these impairments were not severe. (Tr. 17). He further opined that Plaintiff's impairments only mildly reduce his pace/ persistence, daily activities, and socialization. (Tr. 192).

On August 17, 2005, Matthew B. Carleton, a clinical social worker from the VA hospital where Plaintiff was receiving treatment, assigned Plaintiff a GAF rating of 50. (Tr. 288). Mr. Carleton recorded Plaintiff's mood as "shitty," that he made "angry eye contact," and that Plaintiff was angry about having to wait for the start of his appointment. (Tr. 286). Mr. Carleton also noted that Plaintiff reported irritability, anger, poor concentration, and feeling helpless/ hopeless. (Tr. 288). Other than that, no explanation was given for assigning Plaintiff a GAF of 50.

The ALJ made credibility determinations based on discrepancies between the objective medical record and the severity of the symptoms reported by Plaintiff. (Tr. 17). The ALJ made the following comments regarding Plaintiff's credibility: 1) Plaintiff had described daily activities which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, (Tr. 18); 2) Plaintiff's description of symptoms was quite vague and general, lacking the specificity which might otherwise make it more convincing, *id.*; 3) Plaintiff failed to report (until the hearing) that he had worked for a short time after the onset date of his alleged disability, thereby drawing into question the reliability of the rest of his testimony (Tr. 19). The ALJ also took into consideration the fact that Plaintiff admitted quitting his last job because of disputes with his boss, and not for any reasons related to his impairments. (Tr. 18).

The ALJ found Plaintiff suffers from a "severe" physical impairment within the meaning of the regulations, but that, based on the evidence, Plaintiff's mental impairments do not qualify as "severe." (Tr. 15). After making this determination, the ALJ reviewed the testimony at the hearing from Mr. Anderson, the vocational expert, and determined that even though Plaintiff can no longer perform any of his past relevant work, there are a significant number of jobs in the national and local economy that Plaintiff is able to perform. Thus, despite having a combination of "severe" physical impairments and "non-severe" mental impairments, the ALJ concluded Plaintiff was "not disabled" under section 404.1569 and Rules 202.13 and 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 22).

**STANDARD OF REVIEW**

The findings of the ALJ in a Social Security hearing are conclusive, if supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept [as adequate to support a conclusion]." *Richardson, id.; Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The Sixth Circuit has also held that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . This is because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Foster*, 279 F.3d at 353. The Court will therefore "not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (quotation omitted).

**ANALYSIS**

As the Magistrate Judge pointed out in his Report and Recommendation, the Sixth Circuit uses a *de minimis* test in deciding whether or not an impairment is "severe." (ECF DKT #18 at 7). As articulated in *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 691-92 (6th Cir. 1985), "an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work." Based on the evidence in support of the ALJ's opinion, reasonable minds could conclude

Plaintiff does not suffer from a mental impairment that would affect his ability to work, regardless of his age, education, or work experience; and therefore, Plaintiff does not have a "severe" mental impairment. In issuing his final determination, the ALJ made numerous references to the medical record, including many citations to Plaintiff's own examining physician's evaluation.

Dr. Smith found Plaintiff was capable of doing relatively normal daily activities. (Tr. 17, 176). Admittedly, Plaintiff spends most of his days playing computer games or watching TV. *Id*. Dr. Smith found that Plaintiff's ability to follow instructions and work with others would likely be poor, based on his readiness to pick a fight; but having poor social skills does not automatically qualify an impairment as "severe." *Id*. In Dr. Smith's discussions with Plaintiff, Plaintiff revealed he left his last job not because of his impairments, but because he disliked the owner. (Tr. 16, 18, 174). Plaintiff also asserted that he did not care and did not have to do anything. (Tr. 18, 174). Dr. Smith assigned Plaintiff a GAF of 54, (Tr. 177), connoting only "moderate symptoms," which include "conflicts with peers or co-workers." (ECF DKT #18 at 7). Reasonable minds could conclude Plaintiff does not have a severe impairment based on moderate symptoms alone. Arguably, quite a few people who manage to work successfully for a living would qualify for disability benefits if "conflicts with peers or co-workers" were the deciding factor in the disability benefits analysis.

The ALJ also considered the opinion of the State Agency consultative psychologist, Dr. Pawlarczyk, in making his determination. Although Dr. Pawlarczyk did not personally examine Plaintiff, he did go over the medical evidence in the record, including Dr. Smith's report, and concluded, as did the ALJ, that Plaintiff's mental impairments were "not severe." (Tr. 17, 192).

Dr. Pawlarczyk further noted that Plaintiff's impairments only mildly reduce Plaintiff's pace/persistence, daily activities, and socialization. *Id*. Such mild impairments could easily be seen as not affecting Plaintiff's ability to work, regardless of age, education, and previous work experience.

The only examiner that rated Plaintiff as having any symptoms in the "serious" range was the clinical social worker whom Plaintiff saw at a VA facility. (ECF DKT #18 at 7). After one visit, Mr. Carleton assigned Plaintiff a GAF rating of 50. (Tr. 288). In choosing to value the opinions of two doctors who rated Plaintiff with moderate or mild symptoms over the clinical social worker who rated Plaintiff as having more serious symptoms, the ALJ was acting within his "zone of choice." *Buxton*, 246 F.3d at 772. Once again, it does not matter if one examiner's opinion is contrary to the ALJ's determination, as long as there is still substantial evidence to support his finding. *Jones*, 336 F.3d at 477.

In administrative cases such as this, it is up to the ALJ, not the Magistrate Judge, to make decisions based on the credibility of the Plaintiff. *Walters*, 127 F.3d at 528. Here, the ALJ found several discrepancies between Plaintiff's claims of disability and the objective medical evidence found in the record. The most troubling discrepancy was Plaintiff's admitted failure to report that he had done some work after the alleged onset date. (Tr. 19, 327-28). The fact that Plaintiff provided inaccurate information on a matter so integral to determining disability suggested to the ALJ that much of what Plaintiff had alleged may have been similarly unreliable. (Tr. 19). Plaintiff also alleged manipulative limitations with his hands, but the medical evidence did not back that up either. (Tr. 19, 358). The ALJ also found Plaintiff's description of symptoms to be quite vague and general, lacking the specificity which might otherwise make it more convincing.

(Tr. 18). Furthermore, Plaintiff's discussions with Dr. Smith showed that Plaintiff left his last job because he was fed up with his boss, and not because of his inability to work due to any impairment.(Tr. 18, 174).

## CONCLUSION

The expert medical opinions supplied by Dr. Smith and Dr. Pawlarczyk, as well as the questionable credibility of Plaintiff, provide enough relevant evidence to support the conclusion that Plaintiff's mental impairment would not affect Plaintiff's ability to work regardless of his age, education, or work experience. The ALJ's final determination was, therefore, supported by substantial evidence. The Court REJECTS the Report and Recommendation of the Magistrate Judge, recommending remand, and AFFIRMS the denial of benefits.

**IT IS SO ORDERED.**

**DATE: July 16, 2008**

                                                **s/Christopher A.  Boyko**
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**